UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

STEVEN DESHONN-LAMARR
CAMPBELL,

          Plaintiff,

v.

UNKNOWN MILLER, et al.,

          Defendants.
_____/

Case No. 1:21-cv-221

Hon. Hala Y. Jarbou

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Miller, Sipka, & Unknown Parties ##1–4 and 6.  The Court will also dismiss, for failure to state a claim, Plaintiff's due process claim against the remaining Defendants.

**Discussion**

I. **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues the following DRF officials: Correctional Officers Unknown Miller and Unknown Sipka; Segregation Sergeant Unknown Leonard; Unit 12 Yard Officer Unknown Tenhov; an unknown segregation-unit assistant resident unit supervisor/prisoner counselor (ARUS/PC) (Unknown Party #1); an unknown segregation-unit resident unit manager (RUM) (Unknown Party #2); four unknown Unit 500 officers (Unknown Parties ##3–6); an unknown segregation-unit nurse (Unknown Party #7); and an unknown medication-line nurse (Unknown Party #8).

According to the complaint, on November 6, 2019, following his food-service shift, Plaintiff exchanged apparently angry words with prisoner John Cargle about an unknown subject. Unit 1200 Officer Robinson (not a defendant) noticed the exchange and stopped Plaintiff to ask what had happened. Plaintiff apparently explained, though he does not allege what he said.

The following morning, Plaintiff reported to food service for his shift on the breakfast line. When prisoner Cargle came through the food-service line, he gave Plaintiff a menacing look, causing Plaintiff to back away in concern. Later, when Plaintiff was serving lunch, prisoner Cargle again gave him a determined and threatening look. Plaintiff avoided going into the dining area while Cargle was present.

At some point, prisoner Cargle handed a note to Plaintiff, which stated that "Swish," Plaintiff's nickname, needed "to pay $25.00 or get beat up." (Compl., ECF No. 1, PageID.5.) Defendant Miller saw Cargle pass the note. Plaintiff presumably passed the note to

2

prisoner Mitchell because Miller stopped Mitchell, took the note and read it, and then discussed the contents of the note with Defendant Sipka. Defendant Sipka questioned other food-service workers, including Plaintiff and prisoners Brown and Mitchell, to find out what was going on. Defendant Sipka informed Plaintiff that there was a credible threat against him, based on the note and the interviews. Plaintiff informed Sipka that he was in fear for his safety, based on Cargle's statements the preceding evening. Sipka responded that Cargle was on the ride-out list, so everything should be alright. Defendant Sipka ordered Plaintiff to return to his cell while commissary orders were passed out and while A-Lower Unit (Cargle's unit) was on yard. During A-Lower Unit's yard period, prisoner Cargle was taken to segregation on a misconduct charge for threatening behavior toward Plaintiff.

Shortly after he was sent to segregation, Defendant Cargle was approved to be moved to Unit 500 and placed on non-bond status, pending his hearing on the misconduct charge. According to Plaintiff, a prisoner housed in general population who is on non-bond status is restricted to his cell, is not permitted call-outs other than to the medical unit or a court, and must be escorted by an officer whenever he leaves his cell. Plaintiff alleges that such transfers from segregation to general population with non-bond status frequently occur if segregation is overcrowded.

On November 8, 2019, Plaintiff served breakfast and was cleaning up prior to returning to his cell. Prisoner Cargle's cell was opened because he was "inadvertently given a call-out for al-[I]slam Sunni service." (*Id.*, PageID.6.) Cargle was permitted to leave his cell unaccompanied by an officer. Cargle left Unit 500's yard gate and entered Unit 1200's small yard without his identification and call-out being checked by Defendant Tenhov. Plaintiff was still speaking with another inmate about food service. Cargle attacked Plaintiff from behind and struck

3

him several times in the face, neck, head, and body.  Cargle then slammed Plaintiff on his head.  Plaintiff alleges that Defendant Tenhov "intentionally delayed his response to this assault and had already separated Cargle and Plaintiff and fired his ta[s]er, striking Plaintiff in the shoulder forcing the Plaintiff to hit his head on the hard surface." (*Id.*)

Once Plaintiff arrived in segregation, Defendant Leonard refused Plaintiff medical assistance, despite Plaintiff's complaints that he had symptoms of concussion.  Leonard also removed the taser prongs from Plaintiff's shoulder, despite prison policy requiring that the prongs be removed by trained medical staff.  Nurse Unknown Party #7 came to segregation sometime later, but she refused to provide any treatment for the hole in Plaintiff's lip, his swollen eye, or the lump on his head.

Later that evening, Plaintiff complained to Defendant Unit 1200 Officer Unknown Party #5 that he was throwing up, was dizzy every time he lifted his head or moved, was losing his balance, and his ears were ringing.  Defendant Unknown Party #5 told Plaintiff to quit trying to stand up and go to sleep, stating that Plaintiff would feel better in the morning.  Plaintiff responded that he believed he had a concussion and knew that falling asleep was not recommended when you had a concussion.  Unknown Party #5 refused to call health care and walked away.

During the next medication-distribution period, Plaintiff told Defendant Unknown Party #8, the medication nurse, that he believed he had a concussion, and he explained his symptoms.  She responded by giving him ice and telling him to return to his unit.

Plaintiff allegedly continued to complain about his concussion symptoms, but he was ignored.  He filed grievances.  When Plaintiff later was transferred to IBC, medical staff attended to his complaints about a concussion, providing medication to help with Plaintiff's chronic headaches and dizziness.

4

Plaintiff broadly alleges that various Defendants violated prison policy in the performance of their duties. Plaintiff also alleges that all Defendants violated his rights under the Eighth Amendment. Specifically, he alleges that Defendants Miller, Sipka, and Unknown Parties ##1 and 2 violated his Eighth Amendment rights when they allowed Cargle to be released from segregation to general population, non-bond status. In addition, Plaintiff argues that Correctional Officers Unknown Parties ##3, 4, and 6 demonstrated deliberate indifference to his safety when they allowed Cargle to be called out for services while on non-bond status. Plaintiff also alleges that Defendant Tenhov's inattention to Cargle allowed the assault to take place, that Tenhov delayed responding to the assault, and that Tenhov used unreasonable force when he tased Plaintiff after Plaintiff and Cargle had already been separated. Plaintiff also contends that Defendant Leonard demonstrated deliberate indifference to Plaintiff's health and safety when he denied Plaintiff appropriate medical attention after the assault. Similarly, Plaintiff complains that Defendants Leonard and Correctional Officer Unknown Party #5 demonstrated deliberate indifference by refusing to call health care, despite knowing that Plaintiff both was hit in the head and struck his head on the ground, and despite being made aware that Plaintiff had significant symptoms of concussion. Finally, Plaintiff claims that Defendant Nurses Unknown Parties ##7–8 demonstrated deliberate indifference to his serious medical needs when they provided no treatment for his concussion symptoms.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

## II.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.  Policy Violations—Due Process

At several points in his complaint, Plaintiff alleges or suggests that Defendants, in taking or failing to take the actions alleged, violated prison policies.  Arguably, Plaintiff intends to raise a due process claim.

To the extent Plaintiff invokes prison policy, he fails to allege a § 1983 claim. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Section 1983 does not provide redress for a violation of a state law.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007).

Moreover, to demonstrate a violation of procedural due process, a plaintiff must prove the following elements:  (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process.  *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).  "Without a protected liberty or property interest, there can be no federal procedural due process claim."  *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).  Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure.  *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992).

Plaintiff's allegations that multiple Defendants violated prison policy therefore fail to raise a cognizable § 1983 claim.

## IV.     Eighth Amendment

Plaintiff alleges a variety of Eighth Amendment claims against Defendants. First, Plaintiff alleges that Defendants Miller and Sipka demonstrated deliberate indifference to the substantial risk that Plaintiff would be assaulted by prisoner Cargle, when they allowed Cargle to be released from segregation on non-bond status. Second, Plaintiff complains that Correctional Officers Unknown Parties ##3, 4, and 6 demonstrated deliberate indifference to his safety when they allowed Cargle to be called out for religious services while he was on non-bond status. Third, Plaintiff states that Defendant Tenhov demonstrated deliberate indifference by intentionally delaying intervention in Cargle's assault or by being inattentive to the assault taking place and thereafter by using unreasonable force when he tased Plaintiff after Plaintiff and Cargle had already been separated. Fourth, Plaintiff complains that Defendant Correctional Officer Unknown Party #5 demonstrated deliberate indifference by refusing to call for medical care, despite knowing that Plaintiff both was hit in the head and struck his head on the ground and knowing that Plaintiff was experiencing symptoms of concussion. Fifth, Plaintiff claims that Defendant Nurses Unknown Parties ##7–8 demonstrated deliberate indifference to his serious medical needs when they provided no treatment for his concussion.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with

8

"deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions-of-confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

9

### A.     Defendants Miller, Sipka, & Unknown Parties ##1 & 2

Plaintiff alleges that Defendants Miller, Sipka, and Unknown Parties ##1 and 2 demonstrated deliberate indifference to the substantial risk that Plaintiff would be assaulted by prisoner Cargle, when they allowed Cargle to be released from segregation on non-bond status.

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff.  *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995).  Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

Plaintiff's allegations against Defendants Miller, Sipka, and Unknown Parties ##1 and 2 fall short of demonstrating deliberate indifference.  While Defendants may have been aware that Cargle possibly intended to assault Plaintiff, they had no reason to anticipate that placing Cargle on non-bond status in the general-population unit—where he was required to remain in his cell and could only leave the cell when accompanied by an officer—would place Plaintiff at risk

10

from Cargle. Given their knowledge of the conditions set for non-bond status, Defendants' decision to transfer Plaintiff unquestionably was reasonable. *Farmer*, 511 U.S. at 844 (recognizing that, even if an official knows of a substantial risk, he is not liable if he acts reasonably in response to that risk). Further, even if Plaintiff alleged facts suggesting that Defendants could have anticipated a lapse in non-bond restrictions, Plaintiff's allegations would support, at best, a negligence claim. Allegations of negligence fall short of the deliberate indifference required to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence").

Accordingly, Plaintiff's complaint against Defendants Miller, Sipka, and Unknown Parties ##1 and 2 will be dismissed with prejudice for failure to state an Eighth Amendment claim.

**B.     Unknown Defendant Correctional Officers (Unknown Parties ##3, 4, and 6)**

Plaintiff alleges that unknown Defendant Correctional Officers (Unknown Parties ##3, 4, and 6) demonstrated deliberate indifference to Plaintiff's safety when they allowed Cargle to be released from his non-bond housing for a religious service, in violation of the protocols applicable to non-bond status.

As previously discussed, Plaintiff's allegations against Defendant Unknown Parties ##3, 4, and 6 fall well short of demonstrating deliberate indifference. Plaintiff alleges nothing more than a simple mistake by the unknown correctional officers. He fails to allege that, at the time they acted, Defendants were both aware of the risk to Plaintiff and consciously disregarded that risk. *Farmer*, 511 U.S. at 837. Instead, Plaintiff alleges facts suggesting only that they were negligent in opening Cargle's cell door. Because negligence is insufficient to state an Eighth Amendment claim, the Court will dismiss Plaintiff's complaint against Defendant Unknown Parties ##3, 4, and 6 for failure to state a claim.

### C.     Defendant Tenhov

Plaintiff inconsistently alleges that Defendant Tenhov either intentionally delayed intervening in the assault or negligently allowed the assault to occur due to Tenhov's inattention. The Court takes as true for purposes of this decision that Defendant Tenhov intentionally delayed intervening in the attack. Plaintiff also alleges that Defendant Tenhov used excessive force against him, by deploying his taser after Plaintiff and Cargle had already been separated.

Plaintiff's first claim against Defendant Tenhov, Tenhov's intentional failure to intervene to stop Cargle from attacking Plaintiff, is sufficient to state a claim. As discussed, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson*, 468 U.S. at 526–27. To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988). Taking as true Plaintiff's allegations that Defendant Tenhov intentionally delayed intervening in Cargle's assault of Plaintiff, Plaintiff's allegations are sufficient to state an Eighth Amendment claim against Defendant Tenhov.

Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes*, 452 U.S. at 345–46 (1981); *see also Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

With respect to Plaintiff's claim that Defendant Tenhov used excessive force by tasing Plaintiff after the fight had broken up, Plaintiff's allegations, taken as true, are sufficient to state a claim. The Supreme Court has held that "whenever guards use force to keep order," the

12

standards enunciated in *Whitley v. Albers*, 475 U.S. 312 (1986), should be applied. *Hudson*, 503 U.S. at 7; *see also Wilkins v. Gaddy,* 559 U.S. 34, 37–39 (2010).  Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7; *Wilkins*, 559 U.S. at 37.  In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response.  *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953–54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).

Plaintiff alleges that Defendant Tenhov fired a taser at Plaintiff's shoulder after he and Cargle had been separated.  The facts, taken in the light most favorable to Plaintiff, are sufficient to state an excessive-force claim against Defendant Tenhov.

### D. Defendants Correctional Officers Leonard & Unknown Party #5 and Unknown Nurses (Unknown Parties ##7 & 8)

Plaintiff alleges that Defendant Sergeant Leonard refused to call health care to obtain medical treatment for Plaintiff, despite Plaintiff's complaint about the concussion symptoms he was experiencing.  Defendant Leonard also removed the taser prongs without medical assistance, in violation of the rules.  Sometime later, Defendant Nurse Unknown Party #7 refused to provide medical treatment for the hole in Plaintiff's lip, his swollen eye, and the lump on his head, despite Plaintiff's description of his concussion symptoms and of having his head slammed to the ground.  Still later that evening, Plaintiff complained to Defendant Correctional Officer (Unknown Party #5) that he kept throwing up, was very dizzy, and had ringing ears; but Unknown Party #5 refused to call health care and told Plaintiff to lie down and quit trying to stand.

Finally, at the next medication time, Plaintiff complained about his injuries and symptoms to Defendant Nurse Unknown Party #8, who gave him a bag of ice but refused to see him in health care.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay

in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

On initial review, the Court concludes that Plaintiff has alleged sufficient facts to state an Eighth Amendment claim for denial of health care against Defendants Leonard and Unknown Parties ##5, 7, and 8.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Miller, Sipka, & Unknown Parties ##1–4 and 6 will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's due process claims against the remaining Defendants. Plaintiff's Eighth Amendment claims against Defendants Tenhov, Leonard, and Unknown Parties ##5, 7, and 8 remain in the case.

An order consistent with this opinion will be entered.


Dated: August 4, 2021      /s/ Hala Y. Jarbou
                           HALA Y. JARBOU
                           UNITED STATES DISTRICT JUDGE